OPINION *Page 2 
{¶ 1} Defendant-appellant John Allen Pearce, IV appeals from his conviction in the Belmont County Court, Western Division, of misdemeanor assault, a violation of R.C. 2903.13(A), (C). He asserts that there was not sufficient evidence to convict him and that his conviction was against the manifest weight of the evidence. For the reasons expressed below, the judgment of the trial court is affirmed.
 STATEMENT OF CASE {¶ 2} In June 2007, a complaint was filed against Pearce for knowingly causing or attempting to cause physical harm to Theresa Schirtzinger on June 25, 2007. At his arraignment, Pearce entered a not guilty plea and posted bond. The case proceeded to a bench trial; after hearing the evidence the trial court found him guilty. 07/17/07 J.E. Pearce was then sentenced to 180 days. Ninety days were suspended on the condition that he pay $75 in costs, not violate any laws for two years, and not have any intentional contact or communication with Schirtzinger. 07/17/07 J.E. Pearce timely appeals from that conviction.
 ASSIGNMENT OF ERROR {¶ 3} "THE TRIAL COURT COMMITTED ERROR BY FINDING THE APPELLANT GUILTY BECAUSE THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} Pearce's assignment of error references both sufficiency of the evidence and manifest weight of the evidence arguments. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, paragraph two of the syllabus.
 {¶ 5} When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to *Page 3 
the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, ¶ 77, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; instead, it assumes the state's witnesses testified truthfully and determines whether or not that testimony satisfies each element of the crime. State v.Woodward, 10th Dist. No. 03AP-398, 2004-Ohio-4418, at ¶ 16.
 {¶ 6} However, under a manifest weight standard, the appellate court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."Thompkins, 78 Ohio St.3d at 387, 1997-Ohio-52, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 7} Pearce was convicted of first degree misdemeanor assault. R.C.2903.13(A) defines this crime as:
 {¶ 8} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 9} At trial, the victim, Theresa Schirtzinger testified. She indicated that she and Pearce were arguing all day long. (Tr. 12). It finally got to the point that "he got in my [Schirtzinger's] face." (Tr. 13). Schirtzinger stated that she told her roommate, Lori, to call the police. When Lori went for the phone, Pearce went after her, knocked over the television and disconnected the phone in order to stop her from calling the police. (Tr. 12). In order to stop Pearce from pursuing Lori, Schirtzinger threw a bowl at him. Pearce then came after Schirtzinger. (Tr. 17). She then hit him with a frying pan and he threw it back at her. However, it did not hit her. (Tr. 13, 19). She testified that she kept moving away from him and he kept coming after her. (Tr. 13). She stated that she kept moving away from him because she was afraid he was going to hit her. (Tr. 15). At one point, he did catch her; she was in the bedroom trying to put *Page 4 
the phone back together. Schirtzinger testified that Pearce had her on the bed and was twisting her arms and legs. She indicated that she kept "kicking him off". (Tr. 13). The testimony indicated that Pearce did not cause any marks, i.e. bruises, on her that day. (Tr. 20).
 {¶ 10} These facts, when viewed in the light most favorable to the prosecution, constitute sufficient evidence to support the assault charge. Pearce's constant pursuit of Schirtzinger during the altercation, throwing the frying pan back at her and twisting her arms and legs display knowing acts of causing and/or attempting to cause physical harm to her. Thus, the sufficiency argument is without merit.
 {¶ 11} Consequently, we now turn to the issue of whether the weight of the evidence supports the conviction. Pearce argues that the weight of evidence shows that he acted in self-defense.
 {¶ 12} Self-defense is an affirmative defense that must be proven by a preponderance of the evidence. State v. Jackson (1986),22 Ohio St.3d 281, 282. In order to prevail on his defense of self-defense, Pearce had to show: "(1) that he was not at fault in giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from danger was the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger." Id. See, also, State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
 {¶ 13} At trial, Pearce asserted that he acted in self-defense. He admitted that he and Schirtzinger had been arguing all day long. (Tr. 23). He testified that Schirtzinger told Lori to call the police and when he turned to ask the roommate to not call the police, Schirtzinger threw a bowl at him. (Tr. 24). The bowl cut him above the ear which later had to be treated with medical glue. (Tr. 24). He stated that at one point he unplugged the phone so that they could not call the police.
 {¶ 14} He also specified that Schirtzinger and her roommate told him they would not call the police as long as he left. (Tr. 25). However, he acknowledged that he did not leave at that time. (Tr. 26). Instead, he continued to follow Schirtzinger arguing with her; they were each yelling obscenities at each other. (Tr. 26). When she went into the kitchen he followed her continuing the argument. (Tr. 26). It was at *Page 5 
this point, according to him, that she threw the pan at him. He confessed that he threw it back at her. (Tr. 27).
 {¶ 15} He stated that the argument continued into the bedroom where Schirtzinger was trying to put the phone back together. He stressed that Schirtzinger was trying to kick him and he grabbed her legs to stop her from doing so. (Tr. 27). He asserted that he did not twist either her arms or legs. (Tr. 27). Following this, he then packed his things and left. (Tr. 28). He testified that during the whole altercation he never made threatening moves toward either Schirtzinger or her roommate; he asserted he was defending himself. (Tr. 24).
 {¶ 16} When Pearce's version of events is compared to Schirtzinger's version of events, there are noticeable differences between the two. For example, Schirtzinger testified that Pearce twisted her arms and legs, while he maintained that he did not. Likewise, Schirtzinger indicated that she kept moving away from Pearce when he was coming at her because she was afraid that he was going to hit her. Thus, she viewed his act of pursuing her as threatening. He, on the other hand, indicated that his actions that day were non-threatening.
 {¶ 17} If Schirtzinger's version is believed, even though she did admittedly throw a bowl and frying pan at Pearce, Pearce's actions could indicate that he was the initial aggressor. Schirtzinger and he had been arguing and when Schirtzinger told Lori to call the police, Schirtzinger went after Lori. Furthermore, Schirtzinger kept moving away from Pearce, but he continually pursued her throughout the entire apartment. The action of continually pursuing Schirtzinger throughout the apartment, does not indicate that he had a bona fide belief of harm and his only means of escape was through force, the second element of self-defense.
 {¶ 18} That said, if Pearce's version is believed, the weight of the evidence might possibly support the conclusion that he acted in self defense. Schirtzinger admittedly threw things at Pearce first, hitting him with both a bowl and frying pan. Likewise, if he is believed, then his actions were non-threatening in nature, even though he continually pursued Schirtzinger. He indicated that his act of holding, not twisting, Schirtzinger's arms and legs was to keep her from kicking him. *Page 6 
 {¶ 19} Thus, as there are two plausible versions of events, the inconsistencies between the two versions raise a credibility question. The record contains no glaring indication that one or the other is more credible. However, it is noted that the trial court specifically indicated that it found Schirtzinger more credible than Pearce.
 {¶ 20} "Having listened to the testimony in this case — and all evidence is testimonial within this case — I find that the testimony of Ms. Schirtzinger is more credible than that of Mr. Pearce; * * *". (Tr. 31).
 {¶ 21} As the trial court was in the better position to determine credibility due to the fact that it was best able to observe the witnesses' demeanor, gestures and voice inflections, we will defer to its finding. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. See, also, State v. Trembly (2000), 137 Ohio App.3d 134,141-142. Hence, we find that the trial court did not lose its way in finding Pearce guilty of misdemeanor assault.
 {¶ 22} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 Donofrio, J., concurs. Waite, J., concurs. *Page 1